UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Matthew McGuire,

        Plaintiff,

v.

State Farm Fire and Casualty
Company,

        Defendant.

Court File No. 14-cv-1220 (DWF/LIB)

**REPORT AND RECOMMENDATION**

---

This matter comes before the undersigned United States Magistrate Judge upon the Order of Referral, [Docket No. 16], for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.

For reasons outlined below, the Court recommends that the present case be remanded to the Roseau County District Court of the Ninth Judicial District of Minnesota for lack of subject matter jurisdiction.

## I.    BACKGROUND

This case arises from a fire that damaged Plaintiff Matthew McGuire's ("Plaintiff") manufactured home, which was insured under a policy issued by Defendant State Farm Fire and Casualty Company ("Defendant"). (Amended Complaint, [Docket No. 8], 1, ¶¶ 1-2, 4). After Defendant refused to pay Plaintiff's insurance claim regarding the fire, Plaintiff filed suit in the District Court of Roseau County, in the Ninth Judicial District of the State of Minnesota, alleging breach of the insurance contract. (Notice of Removal, [Docket No. 1-1], Ex. A, 6).

On April 22, 2014, Defendant removed the case to the United States District Court for the District of Minnesota on the asserted basis of diversity of citizenship. (Notice of Removal, [Docket No. 1-1], 2).

On January 15, 2015, the District Court referred the case to this Court for a report and recommendation regarding the issue of whether the amount in controversy exceeds the minimum amount required to support diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Order of Referral, [Docket No. 16], 2).

## II.    STATEMENT OF FACTS

On September 17, 2013, a fire occurred in Plaintiff's manufactured home. (Amended Complaint, [Docket No. 8], 1, ¶ 1). The fire destroyed the home and Plaintiff's personal property inside the home. (Id. at ¶ 4). The manufactured home and personal property were insured under a policy issued by Defendant. (Id. at ¶ 2).

On October 15, 2013, Plaintiff submitted a Personal Property Inventory form to Defendant, listing various items of personal property damaged by the fire, for which Plaintiff estimated the cost of replacement at $6,670.00. (Affidavit of Scott G. Williams, [Docket No. 20-1], Ex. B, 4-8). On November 7, 2013, Plaintiff submitted a Sworn Statement of Loss form to Defendant claiming $72,000 for the cost of the damaged manufactured home. (Affidavit of Scott G. Williams, [Docket No. 20-1], Ex. A, 2). Plaintiff also asserts that he has incurred $600 per month in living expenses since the fire and has lost $250 per month in rental income from a tenant.  (Affidavit of Scott G. Williams, [Docket No. 20-4], Ex. L., 16). Defendant subsequently refused to pay Plaintiff's claim under the insurance policy. (Amended Complaint, [Docket No. 8], 1, ¶ 8).

On April 8, 2014, Plaintiff filed the present case in the District Court of Roseau County. (Notice of Removal, [Docket No. 1], 1). Defendant removed the case to the United States District Court for the District of Minnesota on the asserted basis of diversity of citizenship. (Id. at 2). On May 13, 2014, Plaintiff filed his Amended Complaint, [Docket No. 8], which is the operative complaint.

In his Amended Complaint, Plaintiff alleges that he incurred losses that were covered by an insurance policy issued by Defendant in the form of housing expenses, personal property, and "other compensable damages." (Id. at 1). Plaintiff also alleges that "Defendant has not acted in good faith" in refusing to pay Plaintiff's claim under the insurance policy. (Id. at 2). In his prayer for relief, Plaintiff stated that he is seeking a judgment from Defendant in "an amount currently not exceeding $74,999.00, but yet to be determined, plus statutory interest, costs, and applicable attorneys' fees." (Id.).

At the initial pretrial conference following removal, Plaintiff contended that the Court did not have subject matter jurisdiction over this case, asserting that the amount in controversy was less than $75,000.  After the initial pretrial conference, the Court instructed Plaintiff to file a motion to remand for lack of subject matter jurisdiction no later than June 25, 2014. (Minute Entry, [Docket No. 12]). Plaintiff did not, however, file such a motion.

On January 15, 2015, the District Court *sua sponte* referred the matter to this Court for a report and recommendation regarding the issue of whether the amount in controversy meets or exceeds the minimum amount required to support diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Order of Referral, [Docket No. 16], 2).

### III.   DIVERSITY JURISIDCTION

The District Court has referred the present matter for a report and recommendation regarding whether diversity jurisdiction exists. (Order of Referral, [Docket No. 16], 2). As there is no dispute that the parties are citizens of different states, the only issue presently before the Court is whether the amount in controversy exceeds the $75,000 threshold required to support diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

### A.   Standard of Review

Under 28 U.S.C. § 1332(a), district courts have original jurisdiction over cases between citizens of different states in which the amount in controversy exceeds $75,000.

When determining whether an action is removable, the Court must, first, "determine whether the complaint is removable on its face." Wiemers v. Good Samaritan Soc'y, 212 F.Supp.2d 1042, 1045 (N.D.Iowa 2002) (citing McCorkindale v. American Home Assur. Co./A.I.C., 909 F.Supp. 646, 653-55 (N.D. Iowa 1995)). Where, as here, the sufficiency of the amount alleged to be in controversy is questioned, "the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009) (citing Advance Am. Servicing of Ark., Inc. v. McGinnis, 526 F.3d 1170, 1173 (8th Cir. 2008)). This rule applies "even in a removed case where the party invoking jurisdiction is the defendant." James Neff Kramper Family Farm P'ship v. IBP, Inc., 393 F.3d 828, 831 (8th Cir. 2005).

In considering whether the amounts and claims alleged satisfy the required amount in controversy, the court looks to state law to determine the nature and extent of the right to be enforced as well as the state measure of damages and the availability of special and punitive damages. See Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 352-53 (1961). The Court must

engage in a "fact intensive" inquiry to determine whether the preponderance of the evidence standard has been met. Bell, 557 F.3d at 959.  Speculation on the part of the defendant as to the amount in controversy is not be sufficient to meet the preponderance standard. See, e.g., Thomas v. Southern Pioneer Life Ins. Co., 2009 WL 4894695, *2 (E.D.Ark. Dec. 11, 2009); Nowak v. Innovative Aftermarket Sys., 2007 WL 2454118 (E.D.Mo. Aug. 23, 2007). Jurisdictional facts must be judged at the time of the removal. Dyrda v. Wal-Mart Stores, Inc., 41 F. Supp. 2d 943, 946 (D. Minn. 1999).

If "the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." Bell, 557 F.3d at 956 (citing Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 543 (7th Cir. 2006)). Any doubt as to federal jurisdiction must be resolved in favor of remand. In re Prempro Prods. Liab. Litig., 591 F.3d 613, 620 (8th Cir. 2010).

**B.     Analysis**

1. Face of the Complaint

In determining whether a case is removable, the Court first looks to the face of the Complaint. Wiemers, 212 F.Supp.2d at 1045.

Plaintiff's Amended Complaint expressly alleges only a single claim, *i.e.*, breach of contract, in this case, the insurance policy.  In relation to that claim, Plaintiff seeks as relief "an amount currently not exceeding $74,999.00, but yet to be determined, plus statutory interest, costs, and applicable attorneys' fees." (Amended Complaint, [Docket No. 8], 2).

By the phrasing of his prayer for relief for damages allegedly arising out of the breach of contract claim, Plaintiff attempts to expressly demonstrate that his claim is for less than $75,000.

Defendant contends, however, that the phrasing indicates that the amount in controversy is more than $75,000.

Defendant first argues that Plaintiff's mere, generic and singular reference to bad faith in his Amended Complaint requires the Court to consider as part of the amount in controversy potential statutory penalties pursuant to Minn. Stat. § 604.18[1] because the Plaintiff might have been able to seek leave of Court to allege a claim under the statute after removal. The Court disagrees.

The reference to bad faith in the Amended Complaint is not, nor can it be without prior leave of Court, a separate and actionable claim under Minn. Stat. § 604.18 for statutory penalties and attorneys' fees. Minn. Stat. § 604.18, Subd. 4(a) ("Upon commencement of a civil action by an insured against an insurer, the complaint must not seek a recovery under this section."). Rather Plaintiff's singular reference to bad faith is simply part of the Amended Complaint's

---

[1] In pertinent part, Minn. Stat. § 604.18 sets forth:

> **Subd. 2. Liability.** (a) The court may award as taxable costs to an insured against an insurer amounts as provided in subdivision 3 if the insured can show:
>
> (1) the absence of a reasonable basis for denying the benefits of the insurance policy; and
> (2) that the insurer knew of the lack of a reasonable basis for denying the benefits of the insurance policy or acted in reckless disregard of the lack of a reasonable basis for denying the benefits of the insurance policy.
> . . . . .
> **Subd. 3. Damages and costs.** (a) In addition to prejudgment and postjudgment interest and costs and disbursements allowed under law, the court may award an insured the following taxable costs for a violation of subdivision 2:
>
> (1) an amount equal to one-half of the proceeds awarded that are in excess of an amount offered by the insurer at least ten days before the trial begins or $250,000, whichever is less; and
> (2) reasonable attorney fees actually incurred to establish the insurer's violation of this section.

Minn. Stat. § 604.18.

allegation and colorful description of the breach of contract claim involving the insurance policy based upon Defendant's denial of payment on any of Plaintiff's losses resulting from the fire.[2]

Nor are Plaintiff's boiler plate requests for costs, interest, and attorneys' fees in his prayer for relief to be counted towards the amount in controversy in the present case. The diversity jurisdiction statute expressly excludes both costs and interest from the amount in controversy. 28 U.S.C. § 1332(a). In addition, Minnesota follows the general rule that only attorneys' fees that are available pursuant to contract or statute are included in the amount in controversy. See State of Missouri ex rel. Pemiscot County, Mo. v. Western Sur. Co., 51 F.3d 170, 173 (8th Cir.1995); Garrick v. Northland Ins. Co., 469 N.W.2d 709, 714 (Minn. 1991).  There are neither allegations nor claims expressly pled on the face of the complaint that would support including a claim for attorneys' fees in calculating the amount in controversy to support diversity jurisdiction.[3]

---

[2] The operative Amended Complaint contains no detailed factual allegations of the type which would be expected or necessary for an attempt to support a claim under Minn. Stat. § 604.18.

[3] The only potential basis for an award of attorneys' fees is Defendant's conclusory argument that Plaintiff might have amended his complaint to add a "bad faith" claim based on Minn. Stat. § 604.18, upon a prevailing claim of which a plaintiff may obtain an award of attorneys' fees.  See Minn. Stat. § 604.18, Subd. 3(a)(2). Plaintiff has not pled such a claim on the face of his complaint. Even assuming solely for the sake of argument that Plaintiff had pled such a claim, the Court concludes that a potential award of attorneys' fees implicated by such a claim would not be included in the calculation of the amount in controversy.  Claims for statutory penalties are closely scrutinized when determining the amount in controversy, to ensure that the limits on diversity jurisdiction are closely followed. See Ex rel. Pemiscot County, 51 F.3d at 173.

There is little case law regarding whether an unpled bad faith claim pursuant to Minn. Stat. § 604.18 may be considered when calculating the amount in controversy for determining the existence of diversity jurisdiction. However, this Circuit's case law with regard to unpled punitive damages claims is analogous and instructive. In Minnesota, punitive damage claims may not be pursued except upon motion to amend the complaint granted by the Court. In OnePoint Solutions, LLC v. Borchert, the Eighth Circuit considered a Minnesota case where establishing the amount in controversy depended on whether an unpled punitive damages claim could be considered as part of the calculation. OnePoint Solutions, 486 F.3d 342, 350 (8th Cir. 2007). The Eighth Circuit reasoned that the jurisdictional question in that case was "whether a fact finder might legally conclude that" the "damages are greater than the requisite amount[.]" Id. The Eighth Circuit concluded that "the federal court [had] jurisdiction over OnePoint's case unless, as a matter of law, [the plaintiff] could not recover punitive damages ..., the amount of damages [the plaintiff] could recover is fixed below the jurisdictional amount, or no reasonable jury could award damages totaling more than $75,000 in the circumstances that the case presents." Id.

To obtain an award of attorneys' fees under Minn. Stat. § 604.18, Subd. 3(a)(2), a plaintiff must successfully plead and prove a claim of bad faith, which requires a showing that the defendant insurance company did not have a reasonable basis to deny benefits under the insurance policy and either knew that it did not have a reasonable basis to deny benefits or acted in reckless disregard of the lack of a reasonable basis to deny benefits. Minn. Stat. §

Therefore, on the face of the Amended Complaint, it is certainly at least ambiguous and not readily discernible that the minimum amount in controversy could be met at the time of removal of the case from state court in order to support diversity jurisdiction. Accordingly, the Court must move to the second step of the analysis, wherein Defendant, "the party invoking federal jurisdiction[,] must prove the requisite amount by a preponderance of the evidence." Bell, 557 F.3d at 956.

2. Legally Recoverable Damages

As discussed above, Plaintiff's Amended Complaint alleges only a single claim of breach of contract. In Minnesota, the measure of damages for a breach of contract claim is those damages flowing from the alleged breach. Wild v. Rarig, 302 Minn. 419, 440, 234 N.W.2d 775, 789 (1975) (holding that, absent an independent tort, a plaintiff alleging a breach of contract may only seek to recover the damages flowing from the breach).

Defendant first argues that, when determining the potential damages associated with the alleged breach of contract, the Court must look to the estimates of loss that Plaintiff submitted to Defendant when initially submitting his insurance claim. The Eighth Circuit follows the principle that the amount in controversy is to be determined by the value to the plaintiff of the right sought to be enforced. Schubert v. Auto Owners Ins. Co., 649 F.3d 817, 821 (8th Cir. 2011) (citing Advance Am. Servicing, 526 F.3d at 1173). In this determination, a plaintiff's evaluations of the value of his own claim are relevant but not necessarily dispositive as to the amount in

---

604.18, Subd. 2. The record presently before the Court indicates that a fire inspector concluded prior to removal of the case to this Court that the fire in Plaintiff's manufactured home was incendiary in origin and that Defendant had reason to believe that Plaintiff was having money troubles at the time of the fire. (See Def's Statement of the Case, [Docket No. 9], 2-5; Affidavit of Scott G. Williams, [Docket No. 20-4], Ex. L, 14). Evidence that a fire was incendiary in origin and that the insured was having money troubles is a reasonable basis to support an insurer's denial of a fire insurance claim. See Quast v. Prudential Prop. & Cas. Co., 267 N.W.2d 493, 495 (Minn. 1978). As such, under the analytical standard set forth in OnePoint, the Court will not here consider any attorneys' fees award that speculatively might have been attributable to a purely theoretical and in this case actually unpled bad-faith claim when determining the amount in controversy.

controversy. See In re Minnesota Mut. Life Ins. Co. Sales Practices Litig., 346 F.3d 830, 835 (8th Cir. 2003) (noting that a parties' letter containing information regarding their evaluation of the value of their claims was relevant to determining the amount in controversy, but not reaching the issue of whether the letter alone was sufficient to establish the amount); Ex rel. Pemiscot Cnty, 51 F.3d at 173 (noting precedent holding that a plaintiff's allegations of requisite jurisdictional amount are not necessarily dispositive as to the amount in controversy).

Plaintiff's claim for breach of contract is based on Defendant's refusal to pay his claims under the insurance policy for 1) the damages to the manufactured home (Coverage A); 2) the replacement cost of his personal property (Coverage B); and, 3) other compensable damages (Coverage C).  (Pl.'s Amended Complaint, [Docket No. 8], 1).

*Manufactured Home (Coverage A).* Defendant argues the Court should determine the value to Plaintiff of the alleged breach to pay the claim under Coverage A by Plaintiff's estimate of the value of his manufactured home at $72,000. However, the evidence presently in the record before the Court indicates that Plaintiff's ability to recover for the damage to his home under Coverage A could in no event exceed the policy limit of $43,100. (See, Affidavit of Scott G. Williams, [Docket No. 20], Ex. C, 3, 11).  In any event, the actual value of the building was known to all parties at the time of removal as not possibly exceeding the policy limits in light of the original purchase price of $52,000 and the fact that it had depreciated in value during the five years that Plaintiff had lived in it. (See Affidavit of Scott G. Williams, [Docket No. 20-4], Ex. L, 15) (value of the home at initial purchase). The best measure of the value to Plaintiff of his ability to recover under Coverage A at the time of removal was the policy limit of $43,100.

*Personal Property (Coverage B).*  Defendant next contends the Court should determine the value to Plaintiff of his ability to recover for the loss of his personal property under Coverage

B as the policy limits under Coverage B of $43,100. However, Plaintiff has not attempted to make a claim in excess of the policy limits. Rather, at the time of removal Plaintiff had submitted a proof of loss form containing an inventory of his lost personal property, and even accepting Plaintiff's lay opinion of the value of his destroyed personal property in that inventory form, the value to Plaintiff had not changed as of the time of removal and did not exceed $7,000.

*Other Compensable Damages (Coverage C).* Plaintiff's assertions that he is entitled to other compensable damages resulting from the alleged breach of the insurance contract are based on his claims for increased living expenses and lost rental income under Coverage C. At the time of removal, Plaintiff claimed that he was incurring $600 per month in additional living expenses and a loss of $250 per month in lost rental income.  These monthly amounts are also equal to the monthly limits available under the insurance policy. It is uncertain how much time might pass between the date of the fire and the resolution of Plaintiff's claim of breach of contract. However, the insurance policy itself limits the amount Plaintiff can recover under Coverage C to twenty-four (24) months of increased living expenses and twelve (12) months of lost rental income. (See Affidavit of Scott G. Williams, [Docket No. 20], Ex. C, 11).  Accordingly, at the time of removal the most generous measure of the value to Plaintiff of his ability to recover under Coverage C is the maximum policy benefit potentially available to Plaintiff.  The maximum Plaintiff could ever attempt to recover for increased living expenses is $14,400, and for lost rental income is $3,000.

Finally, relying on Christensen v. Owners Ins. Co., No. CIV. 14–4757 (RHK/JJK), 2015 WL 574522, at *2 (D. Minn. Feb. 11, 2015), Defendant argues that the Court should simply base its determination as to the amount in controversy on Plaintiff's subjective belief as to the value of his fire losses and the combined coverage limits under the policy, notwithstanding what was

actually known to Defendant about the limits to Plaintiff's personal damages, and even where that claim obviously exceeds the low limits of the operative insurance policy. However, in Christensen the District Court noted that the high coverage limits available there, which were "well in excess of $75,000", which supported the plaintiff's lay valuation of his own claim. Id. In the present case, by contrast, the low policy limits directly weigh against Plaintiff's lay valuation of his claim for purposes of Defendant's assertion that the amount in controversy was satisfied at the time of removal because the Plaintiff could not ever recover in excess of the low policy limits even if successful on his sole breach of contract claim.  When determining the propriety of removal, any doubts as to the existence of subject matter jurisdiction must be resolved in favor of remand. In re Prempro Prods., 591 F.3d at 620.

Based on all of the foregoing, the maximum legally recoverable value to Plaintiff of the damages flowing from the alleged breach of contract based on what was in fact actually known by Defendant at the time of removal did not exceed $68,000; which is well below the $75,000 minimum amount in controversy to support removal of the case to Federal Court on the basis of diversity jurisdiction.

In the present case, notwithstanding Plaintiff's own pre-suit personal subjective lay description of his belief as to the value of the property he lost in the fire giving rise to this case, the Defendant, State Farm Fire and Casualty Company, has not met its burden to show by a preponderance of the evidence that, at the time of removal of this case from state court, the minimum amount in controversy that could be legally awardable by a jury, exceeded the minimum amount necessary to support diversity jurisdiction. See Kopp v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002) ("[A]n amount that a plaintiff claims is not 'in controversy' if no fact finder could legally award it").

## IV.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. This case be **REMANDED** to the Roseau County District Court of the Ninth Judicial District of the State of Minnesota for lack of subject matter jurisdiction.

Dated: April 17, 2015                                    s/Leo I. Brisbois
                                                         Leo I. Brisbois
                                                         United States Magistrate Judge

## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by May 1, 2015**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by May 15, 2015**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.